IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JIMMY D. VAUGHN,<br> PLAINTIFF,<br><br>VS.<br><br>CAROLYN W. COLVIN, ACTING<br>COMMISSIONER OF SOCIAL SECURITY,<br> DEFENDANT. | §<br>§<br>§<br>§ CIVIL ACTION NO. 4:12-CV-907-Y<br>§<br>§<br>§<br>§ |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Jimmy D. Vaughn ("Vaughn") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Vaughn protectively applied for DIB and SSI in February 2009, alleging that his disability began on March 28, 2008. (Transcript ("Tr.") 13, 160-67.) After his applications for benefits were denied initially and on reconsideration, Vaughn requested a hearing before an administrative law judge ("ALJ"). (Tr. 13, 97-104, 109-23.) The ALJ held a hearing on April 18, 2011, and he issued an unfavorable decision on July 8, 2011.

(Tr. 13-24, 57-92.) On October 18, 2012, the Appeals Council denied Vaughn's request for review, leaving the ALJ's decision as the final decision of the Commissioner in his case. (Tr. 6-9; *see* Tr. 1–2.) Vaughn subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or

equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III.  ISSUE

In his brief, Vaughn presents the following issue: Whether the ALJ followed the proper legal standard in evaluating the opinion of Vaughn's treating physician. (Plaintiff's Brief ("Pl.'s Br.") at 1, 6-10.)

### IV.  ALJ DECISION

In his July 8, 2011 decision, the ALJ found that Vaughn met the insured status requirements of the SSA through December 31, 2013 and had not engaged in any substantial gainful activity since March 28, 2008, the alleged onset date of disability. (Tr. 15.) At the second step, the ALJ found that Vaughn suffered from the severe impairments of "bilateral ples planus, status right foot surgery, and diabetes mellitus." (Tr. 16.) At the third step, the ALJ found that Vaughn did not suffer from an impairment or combination of impairments that met or equaled one listed in the Listing. (Tr. 16.) As to Vaughn's residual functional capacity ("RFC"), the ALJ stated the following:

> I find that the claimant has the residual functional capacity to at least lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk 2 hours in an 8-hour workday. He can sit 6 hours in an 8-hour workday. He is not limited in pushing and pulling, including the operation of hand and/or foot controls, with his upper and lower extremities. He has no postural, manipulative[,] visual, communicative, or environment limitations.

(Tr. 16 (emphasis omitted).) Based upon this RFC assessment, the ALJ opined that Vaughn was unable to perform his past relevant work. (Tr. 22.) However, at the fifth step, the ALJ found, relying on the vocational expert's testimony, that there were jobs that existed in significant numbers in the national economy that Vaughn could perform. (Tr. 23-24.) Consequently, the ALJ found Vaughn was not disabled. (Tr. 24.)

## V. DISCUSSION

### A. Treating Physician Opinion

Vaughn argues that the ALJ improperly analyzed the opinion of Michael Saldino, D.P.M., C.P.O. ("Dr. Saldino"), without considering the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). (Pl.'s Br. at 6-10.) In a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" ("Medical Source Statement") dated April 12, 2011, Dr. Saldino opined that Vaughn: (1) could occasionally lift and/or carry less than ten pounds; (2) could stand and/or walk less than two hours in an eight-hour workday; (3) could sit about six hours in an eight-hour workday; (4) was, due to pain in his feet, limited in his lower extremities in his ability to push and/or pull; and (5) could very occasionally climb and balance and occasionally kneel, crouch, and crawl. (Tr. 692-93.) Dr. Saldino further stated:

> Basically any excessive standing/walking/w[eigh]t bearing to feet will result in progressive [increase in] pain/limping. Upper extermities [sic] ok—normal. Surgically corrected foot that still is painful. Limit approx.. 10 min. standing per 60 min[.] Rec[ommend] less than 8 hrs total of that[.]

(Tr. 693.) In addition, Dr. Saldino opined in the Medical Source Statement that Vaughn was limited in his ability to see but was not limited in any other communicative, manipulative, or environmental limitations. (Tr. 694.)

Dr. Saldino also wrote a letter dated April 14, 2011 in which he stated that Vaughn had undergone severe high level reconstructive surgeries to address his "flat deformed painful feet." (Tr. 695.) Dr. Saldino further opined that, while Vaughn's situation was better, it was not normal and that Vaughn's "capability to work a traditional walking, standing, weight bearing job will always be severely limited." (Tr. 695.) Dr. Saldino also stated, "Although he may be

capable of sedentary types of employment his comorbidities[1] will make these pursuits difficult rapidly." (Tr. 695.)

In this case, as noted above, the ALJ determined that Vaughn had the RFC to lift and/or carry twenty pounds occasionally and ten pounds frequently and he could stand and/or walk two hours and sit six hours in an eight-hour workday.[2] In making this RFC determination, the ALJ reviewed the medical evidence of record, including the following: (1) treatment records from Dr. Saldino indicating that he treated Vaughn on various occasions for Vaughn's foot problems between 2008 and 2011 (Tr. 16-18; see Tr. 272, 576-603, 611-52, ); (2) treatment records indicating Vaughn "underwent left foot bunionectomy, with osteotomy and screw fixation on January 18, 2008, due to foot pain" (Tr. 16); (3) treatment records from Blane Graves, M.D. ("Dr. Graves"), showing that, beginning in around 2007, he treated Vaughn for a variety of

---

[1] While the handwriting of Dr. Saldino is mostly decipherable, the Court had made an educated guess as to the word "comorbidities" in the sentence. However, the intended conclusion by Dr. Saldino is unmistakable.

[2] According to the definitions in the regulations, the ALJ's RFC determination appears to indicate that Vaughn cannot perform the full range of light work. Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a). Light work is defined as follows:

> Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). The primary difference between sedentary and most light jobs is that light work requires a good deal of walking or standing. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "'Frequent' means occurring from one-third to two-thirds of the time." Id. at *6. "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Id. "Sitting may occur intermittently during the remaining time." Id.

ailments, including foot problems (Tr. 17; *see* Tr. 273-324); (4) hospital records dated in April 2009 showing that Dr. Saldino performed "surgery [on Vaughn] for right foot, triple arthrodesis, and right foot fixation removal, due to right foot degenerative joint disease/pain" (Tr. 17; *see* Tr. 656-57); (5) a May 2009 consultative examination in which Elie Toubia, M.D. ("Dr. Toubia"), (a) diagnosed Vaughn with bilateral pes planus and status post-surgery of the right foot, (b) noted that Vaughn's right foot was in a cast, and (c) stated that an x-ray of Vaughn's right foot "revealed post-operative changes of the foot" and a mottled appearance of the "calcaneus and talus, which could be related to disuse osteoporosis"[3] (Tr. 17; *see* Tr. 562-65); (6) a Physical Residual Functional Capacity Assessment ("PRFC") dated June 25, 2009 in which State Agency Medical Consultant ("SAMC") Bonnie Blacklock, M.D. ("SAMC Blacklock"), opined that Vaughn: (a) could lift fifty pounds occasionally and twenty-five pounds frequently, (b) could stand or walk about six hours and sit for about six hours in an eight-hour workday, and (c) had the unlimited ability to push and/or pull (Tr. 17; *see* Tr. 568-75); (7) a Case Assessment Form dated August 27, 2009 in which SAMC Laurence Ligon, M.D. ("SAMC Ligon") affirmed SAMC Blacklock's June 25, 2009 PRFC (Tr. 17; *see* Tr. 604); and (8) Vaughn's testimony at the hearing (Tr. 18).

As to the opinion evidence in the record, the ALJ further stated:

> The record shows also that the State Agency's expert medical doctors and other expert consultants evaluated the claimant's physical impairments based on all the evidence of record from all medical sources, treating and consultative. In their expert medical opinion, they found that the claimant's residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). . . . The

---

[3] Dr. Toubia further noted that Vaughn had normal range of motion of his upper extremities, neck, lumbar spine, and lower left extremity and that he had normal muscle tone and no muscle atrophy or fasciculation in his upper or lower extremities. (Tr. 563.) Dr. Toubia also noted that Vaughn had normal grip strength and was able to move all four extremities spontaneously and without difficulty. (Tr. 563.) Dr. Toubia further indicated that he was unable to examine Vaughn's right lower extremity fully because it was in a cast. (Tr. 563.)

residual functional capacity evaluation/determination I make is more limited, giving claimant the benefit of any doubt.

I have also I have [sic] reviewed, considered, evaluated, analyzed, and weighed all opinion evidence, conflicting or otherwise, and regardless of its nature and source (consultative, treating, or State medical experts), in accordance with the requirements of 20 C.F.R. 404.1527 and Social Security Ruling 96-2p, 96-5p, and 96-6p. (See previous discussions of all the various contrary, contradictory, or similar opinions/conclusions of claimant's physical and mental impairments by source and exhibits cited heretofore). . . . In this regard, the opinions/conclusions submitted by Dr. Saldino, the treating doctor, in his conclusory reports, regarding the nature and severity of the claimant's physical impairments, cannot be given controlling weight for the following reasons, in addition to those previously cited when discussing his medical submissions:

(1) his opinions/conclusions do not meet the consistency and well-supported requirements of SSR 96-2p[], nor are they consistent with the preponderance of the objective medical and other evidence of record;

(2) as a treating doctor, he has not placed or recommended hospitalization or placement in a sheltered or highly supported living environment due to the severity of claimant's physical or mental condition; nor has claimant had to seek emergency treatment for such condition;

(3) his opinions/conclusions are inconsistent with the treating doctor's own findings or opinions in other parts of his report(s);

(4) his entries on the forms do not state the objective or sufficiently explanatory bases or factors that support his opinions/conclusions, which failure detracts from the probative value to be given the form and the opinions/conclusions stated therein—generally more weight is given to the opinions expressed by the claimant's treating sources . . .; however, when conclusory forms/reports are submitted by treating sources, without sufficient progress/treatment notes, or without citing appropriate diagnostic laboratory or objective evidence to provide such a longitudinal foundation upon which to objectively evaluate and analyze such opinions/conclusions, the bases for giving them controlling weight over other opinion evidence, is no longer applicable; and,

(5) his opinions/conclusions are on issues reserved to the Commissioner (e.g., RFC, PRW, application of the vocational factors, etc.)—for example, RFC is an assessment made by an adjudicator that is based on consideration of all the relevant evidence (20 C.F.R. 404.1545); a medical source statement may be based on the medical source's records and examination of the claimant, but does not reflect consideration of other medical and non-medical evidence of record; thus, the medical source statement may provide an incomplete picture of claimant's abilities; moreover, the doctor is not a vocational expert; and, although a doctor may opine that a claimant is "disabled," it is not usually clear that the doctor is

familiar with the definition of "disability" contained in the Social Security Act and regulations.

Therefore, his opinions/conclusions are accorded only the weight merited by the overall evidence from him, in conjunction with the total evidence in the case and other relevant factors as provided in the regulations. . . .

Moreover, due weight and consideration was given to the analyses by the State Agency's highly qualified medical and other personnel, who are experts in the evaluation of medical issues in disability claims under the Social Security Act. . . . Their documents also establish that the evidence of the claimant's treating sources was given its due weight when considered along with the evaluations of consultative physicians, pursuant to the guidelines in section 404.1527 (SSR 96-2p). Therefore, in making my decision, I must give greater weight to the opinion of the State Agency's expert medical and other expert personnel regarding the severity of the claimant's physical and mental impairments and residual functional capacity. Their opinions are consistent with and supported by the preponderance of the medical and the other evidence in the record, especially evidence of medically acceptable clinical and laboratory diagnostic techniques. SSR 96-6p.

(Tr. 17, 21-22.)

The regulations, rulings, and relevant case law reflect that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made. *See generally* 20 C.F.R. §§ 404.1527(b), (d), 416.927(b), (d); *see also* SSR 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. §§ 404.1527(b), (d)(1), 416.927(b), (d)(1). Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding

9

statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790. Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [404.1527(c)]." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis of 20 C.F.R. §§ 404.1527 and 416.927, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 416.927(c); SSR 96-6p, 1996 WL 364180, at *3; SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[4]

Assuming, without deciding, that the ALJ was required to go through the factors set forth in 20 C.F.R. §§ 404.1529(c) and 416.927(c) when analyzing the opinion of Dr. Saldino,

---

[4] Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.").

Vaughn's treating physician, the Court concludes that the ALJ did properly evaluate such opinion. To begin with, it is clear that the ALJ was aware of his obligations in analyzing the opinions of a treating physician as he specifically stated that he "reviewed, considered, evaluated, analyzed, and weighed all opinion evidence, conflicting or otherwise, and regardless of its nature and source (consultative, treating, or State medical experts), in accordance with the requirements of 20 CFR 404.1527 . . . ."[5] (Tr. 21.) As to factors one and two under which the ALJ evaluates the examining and treatment relationship between Vaughn and Dr. Saldino, the ALJ noted that Dr. Saldino was Vaughn's treating physician, reviewed Vaughn's treatment history with Dr. Saldino (including citing to the exhibits in the record where such records were located), and discussed various times when Vaughn was examined by Dr. Saldino. (*See* Tr. 16-22.)

As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of physician's opinion as well as any other factors that "tend to support or contradict the opinion" (*see* 20 C.F.R. § 416.927(c)(3), (4), (6)), the ALJ explained in painstaking detail why he was not accepting Dr. Saldino's opinions in the April letter and Medical Source Statement. Specifically, the ALJ found that Dr. Saldino's opinions were not consistent with his own treatment records or the preponderance of the other objective medical and other evidence in the record, which did not indicate (as set forth above) that Vaughn was as limited in his abilities as Dr. Saldino opined in the April letter and Medical Source Statement. (Tr. 21.) As to factor

---

[5] This is the relevant regulation concerning how to evaluate opinion evidence, including a treating physician's opinion. *See also* 20 C.F.R. § 416.927.

11

five, it is clear that the ALJ knew Dr. Saldino was a specialist as he indicated that Dr. Saldino was a "D.P.M."[6] (Tr. 16.)

Vaughn argues that the ALJ erred in not giving weight to Dr. Saldino's opinions because there were "no other treating physician opinions regarding Vaughn's feet in the record." (Pl.'s Br. at 9.) While this may be true, the ALJ can reject the opinions of a treating physician for good cause. As set forth above, the ALJ explained that he was not accepting Dr. Saldino's opinions in the April letter and Medical Source Statement because, *inter alia*, he was giving more weight to other opinion evidence in the record. It is clear that the ALJ relied on the findings of the other medical evidence in the record, including the findings of Dr. Toubia and the SAMCs, in determining that Vaughn was not disabled.[7] As noted above, conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. Because the ALJ properly considered the opinions of Dr. Saldino and went through the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in analyzing such opinions and substantial evidence supports the ALJ's decision, the Court concludes that the ALJ did not err. Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

---

[6] D.P.M. stands for Doctor of Podiatric Medicine. Dorland's Illustrated Medical Dictionary 572 (31st ed. 2007)

[7] While the ALJ did not adopt Dr. Saldino's RFC determination that Vaughn was not capable of performing, in essence, the full range of sedentary work, it is obvious that the ALJ took such opinions into account in forming his RFC determination. The SAMCs, in the PRFC, had opined that Vaughn could perform medium work. While giving the SAMCs' opinions some weight, the ALJ ultimately decided Vaughn was not capable of performing medium work, instead assigning him an RFC assessment of less than the full range of light work. In making such a determination, the ALJ stated that he was giving Vaughn a more limited RFC evaluation because he wanted to give Vaughn "the benefit of any doubt." (Tr. 17.)

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **January 17, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 3, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv